Christin Cho (Cal. Bar No. 238173)
christin@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID WHITE, individually and on behalf of all others similarly situated,<br><br>   *Plaintiff,*<br><br>v.<br><br>WELLA OPERATIONS US LLC,<br><br>   *Defendant.* | Case No. 2:22-cv-9339<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

# Table of Contents

I.     Introduction..................................................................................................... 1

II.    Parties. ............................................................................................................... 2

III.   Jurisdiction and Venue.................................................................................... 2

IV.    Facts. .................................................................................................................. 3

    A.     Benzene is toxic................................................................................... 3

    B.     Defendant's Products contain benzene............................................. 4

    C.     Defendant's Products should not contain benzene......................... 6

    D.     Consumers are not aware of the danger posed by Defendant's

          Products............................................................................................. 6

    E.     Plaintiff was misled by Defendant. ................................................. 10

V.     Class Action Allegations. ............................................................................. 11

    A.     The Nationwide Class and the Florida Subclass ........................... 11

VI.    Claims. ............................................................................................................ 13

    Count I:  Violation of the Florida Deceptive and Unfair Trade Practices

          Act (FLA. STAT. §501.201, *et seq.*)........................................ 13

    Count II: Breach of Express Warranty ................................................... 16

    Count III: Breach of Implied Warranty .................................................. 18

    Count IV: Unjust Enrichment ................................................................... 21

VII.   Relief. .............................................................................................................. 21

## I.    Introduction.

1.    Benzene is a dangerous, toxic chemical.  It is "highly toxic to humans, which means it can harm you if you swallow it, touch it, or breathe it in."[1]  Benzene exposure can harm the immune system, lead to anemia, damage nerves, and cause nervous system problems.[2]  As the FDA states, "Benzene is a known human carcinogen that causes leukemia and other blood disorders."[3]  It is "known to cause cancer, based on evidence from studies in both people and lab animals."[4]  Benzene "exposure can increase the risk of certain cancers by as much as 40%."[5]  Benzene is so harmful that "[t]here is no safe level of human exposure to benzene."[6]

2.    Defendant Wella Operations US LLC ("Wella") makes, sells, and markets beauty and haircare products, including the Sebastian Professional brand of dry shampoo.  None of Defendant's products list benzene as an ingredient.  Yet, independent laboratory testing shows that some of its products do in fact contain benzene.[7]  Moreover, the amount of benzene released by the Defendant's products can substantially exceed 2 ppm—a regular exposure level that "clearly … increases the risk of cancer."[8]

3.    Moreover, there is no reason for these products to contain benzene.  They can, and are, manufactured without benzene by Defendant's competitors.[9]  In addition,

---

[1] https://www.webmd.com/beauty/what-is-benzene
[2] https://www.webmd.com/beauty/what-is-benzene
[3] https://www.fda.gov/drugs/pharmaceutical-quality-resources/fda-alerts-drug-manufacturers-risk-benzene-contamination-certain-drugs
[4] https://www.cancer.org/healthy/cancer-causes/chemicals/benzene.html
[5] https://www.drugwatch.com/benzene/
[6] https://www.ewg.org/news-insights/news/2022/03/why-cancer-causing-benzene-widespread-personal-care-products
[7] https://assets-global.website-files.com/6215052733f8bb8fea016220/6360f7f49903987d8f4f4309_Valisure%20FDA%20Citizen%20Petition%20on%20Benzene%20in%20Dry%20Shampoo%20Products_103122.pdf
[8] https://www.consumerreports.org/sunscreens/fda-safety-risks-aveeno-neutrogena-sunscreens-with-benzene-a8377840278/
[9] https://assets-global.website-files.com/6215052733f8bb8fea016220/6360f7f49903987d8f4f4309_Valisure%20FDA%20Citizen%20Petition%20on%20Benzene%20in%20Dry%20Shampoo%20Products_103122.pdf

these products are cosmetics, which are not designed to contain benzene. Thus, no amount of benzene is acceptable in these products. The presence of benzene in the products makes them adulterated and misbranded, and therefore illegal to sell under both federal and state law. *See* 21 U.S.C. § 331(a) (prohibiting the "introduction into interstate commerce" any "cosmetic that is adulterated or misbranded"); *Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1085 (11th Cir. 2019).

4.      Plaintiff David White purchased Defendant's haircare product. The product did not list benzene as an ingredient. Plaintiff trusted the accuracy of the labels, and understood that the product was properly manufactured, free from defects, safe for its intended use, not adulterated or misbranded, and legal to sell. But the product was contaminated with benzene.

5.      Plaintiff brings this case for himself and for other consumers who purchased Defendant's dry shampoo products.

## II.    Parties.

6.      Plaintiff is domiciled in Hillsborough County, Florida.

7.      The proposed class includes citizens of all states.

8.      Defendant is a Delaware limited liability company with its principal place of business located in Calabasas, California. Defendant markets and sells the Sebastian Professional brand of hair products.

## III.   Jurisdiction and Venue.

9.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from the Defendant.

10.     The Court has personal jurisdiction over Defendant because Defendant resides in California and does business here.

11.     Venue is proper because Defendant resides in Los Angeles County.

**IV.    Facts.**

    **A.    Benzene is toxic.**

    12.    Benzene is a chemical that is toxic to humans.  It is well-known that benzene is a cancer-causing substance.[10]  For example, the National Toxicology Program states that benzene is "known to be a human carcinogen based on sufficient evidence of carcinogenicity from studies in humans."[11]  The International Agency for Research on Cancer agrees: benzene has been "found to be carcinogenic to humans."[12]  Benzene was "[f]irst evaluated by IARC in 1974 … and was found to be carcinogenic to humans (Group 1), a finding that has stood since that time."[13]  The Centers for Disease Control and Prevention confirms that benzene causes cancer.[14]  And, the World Health Organization has classified benzene as a Group 1 compound thereby defining it as "carcinogenic to humans."[15]

    13.    "Exposure to benzene increases the risk of developing leukemia and other blood disorders."[16]  Benzene is particularly dangerous because "[t]here is no safe level of human exposure to benzene."[17]  "[E]ven low-level benzene exposure can greatly increase the risk of leukemia."[18]  "Benzene affects the blood-forming system at low levels," and "there is no evidence of a threshold.  There is probably no safe level of exposure to

---

[10] https://www.cancer.gov/about-cancer/causes-prevention/risk/substances/benzene
[11] Benzene, Report on Carcinogens, Fourteenth Edition, DEPT. OF HEALTH AND HUMAN SERVICES (Nov. 3, 2016), https://ntp.niehs.nih.gov/ntp/roc/content/profiles/benzene.pdf. (emphasis in original).
[12] Benzene, IARC MONOGRAPHS ON THE EVALUATION OF CARCINOGENIC RISKS TO HUMANS, Volume 120 (2018),
https://publications.iarc.fr/_publications/media/download/6043/20a78ade14e86cf076c3981a9a094f45da6d27cc.pdf.
[13] *Id.*
[14] Citizen Petition at 1 (citing Centers for Disease Control and Prevention, Facts About Benzene (2018) (https://emergency.cdc.gov/agent/benzene/basics/facts.asp)).
[15] *Id.* (citing International Agency for Research on Cancer and World Health Organization, IARC Monographs on the Identification of Carcinogenic Hazards to Humans (https://monographs.iarc.who.int/list-of-classifications)).
[16] https://www.cancer.gov/about-cancer/causes-prevention/risk/substances/benzene
[17] https://www.ewg.org/news-insights/news/2022/03/why-cancer-causing-benzene-widespread-personal-care-products
[18] https://www.drugwatch.com/benzene/

benzene, and all exposures constitute some risk."[19]  Due to its toxicity, the United States "banned benzene's use as an ingredient nearly 45 years ago."[20]

14.    In addition, because it is a colorless liquid that evaporates quickly when exposed to air,[21] consumers may be unaware that they have been exposed, and unwittingly inhale it.  "Most benzene exposure happens when people breathe in air containing benzene."[22]

15.    Because of its harmfulness, the use of benzene in manufacturing is subject to limits.  For example, because of benzene's "unacceptable toxicity," it is classified as a Class 1 solvent that "should be avoided even in the manufacture of drug substances, excipients, or drug products."[23]  Even where the use of benzene "is unavoidable to produce a drug product with a significant therapeutic advance," "its levels should be restricted to 2 parts per million (ppm), unless otherwise justified."[24]  "There is no safe level" of benzene exposure,[25] and "all exposures" to benzene "constitute some risk."[26]

### B.    Defendant's Products contain benzene.

16.    Wella is a beauty company.  It has a family of brands including Sebastian Professional.  Under the brand name Sebastian Professional, Wella sells dry shampoo products (the "Products") such as the Sebastian Dry Clean Only Dry Shampoo.

17.    Defendant's Products, including the Sebastian Dry Clean Only Dry Shampoo, are cosmetics.[27]  Each of Defendant's Products is marketed in substantially

---

[19] https://www.annualreviews.org/doi/full/10.1146/annurev.publhealth.012809.103646
[20] https://www.theguardian.com/us-news/2022/mar/18/benzene-carcinogenic-chemical-personal-care-products-us#:~:text=Benzene%20can%20also%20be%20added,as%20high%20as%2021%20ppm.
[21] https://www.cancer.org/healthy/cancer-causes/chemicals/benzene.html
[22] https://www.drugwatch.com/benzene/
[23] https://www.fda.gov/drugs/pharmaceutical-quality-resources/fda-alerts-drug-manufacturers-risk-benzene-contamination-certain-drugs
[24] https://www.fda.gov/drugs/pharmaceutical-quality-resources/fda-alerts-drug-manufacturers-risk-benzene-contamination-certain-drugs
[25] https://www.ewg.org/news-insights/news/2022/03/why-cancer-causing-benzene-widespread-personal-care-products
[26] https://www.annualreviews.org/doi/full/10.1146/annurev.publhealth.012809.103646
[27] https://www.valisure.com/valisure-newsroom/valisure-detects-benzene-in-dry-shampoo

the same way—as dry shampoo—and fails to include labeling indicating to consumers that the Products contain the known human carcinogen, benzene, at levels that are dangerous to human health when used as directed.  They do not list benzene in the ingredients list, and do not warn of benzene or benzene exposure.  Based on these labels, consumers are misled into believing that the Products do not contain benzene.

18.    In October 2022, Valisure, an independent laboratory, released a report after testing a number of dry shampoo products for benzene.

19.    Valisure is an independent laboratory that is "accredited to International Organization for Standardization" standards for chemical testing, and is registered with the Drug Enforcement Agency.[28]  Its mission "is to help ensure the safety, quality and consistency of medications and supplements in the market."[29]

20.    The dry shampoos tested by Valisure included the Sebastian Dry Clean Only Dry Shampoo.[30]  Valisure's results showed that the Sebastian Dry Clean Only Dry Shampoo contained benzene.[31]  In particular, the Sebastian Dry Clean Only Dry Shampoo 1.7-ounce contained 7.76 parts per million ("ppm") of benzene on the first spray, 4.96 ppm in the second spray, 4.44 ppm in the third spray, and 3.65 ppm in the fourth spray.  Thus, all four sprays exceeded 2 ppm, a regular exposure level that "clearly … increases the risk of cancer."[32]

21.    Defendant's Products are defective because they contain significant amounts of the chemical benzene, a known human carcinogen, and release benzene when used as intended.

---

[28] https://assets-global.website-files.com/6215052733f8bb8fea016220/6360f7f49903987d8f4f4309_Valisure%20FDA%20Citizen%20Petition%20on%20Benzene%20in%20Dry%20Shampoo%20Products_103122.pdf
[29] https://assets-global.website-files.com/6215052733f8bb8fea016220/6360f7f49903987d8f4f4309_Valisure%20FDA%20Citizen%20Petition%20on%20Benzene%20in%20Dry%20Shampoo%20Products_103122.pdf
[30] Id.
[31] Id.
[32] https://www.consumerreports.org/sunscreens/fda-safety-risks-aveeno-neutrogena-sunscreens-with-benzene-a8377840278/

**C.    Defendant's Products should not contain benzene.**

22.    Because dry shampoo products are cosmetics, cosmetic companies such as Wella "have a legal responsibility for the safety of their products and ingredients."[33]

23.    Further, because the Products are cosmetics, any amount of benzene in them is unacceptable.  The FDA allows the use of up to 2 ppm of benzene where it is "unavoidable in order to produce a drug product with a significant therapeutic advance."[34]  But where, as here, the Product is a cosmetic that has no therapeutic value and no pharmaceutical ingredient, any benzene is unacceptable.[35]

24.    Moreover, the use of benzene in these Products is avoidable.  Other cosmetic companies can—and do—manufacture dry shampoo products without benzene.  For example, the Valisure report contains a list of dozens of dry shampoos where benzene was not detected.[36]  This shows that dry shampoo products can safely be made while avoiding benzene contamination.  Accordingly, the presence of benzene—a known carcinogen—in Defendant's Products is unacceptable.

**D.    Consumers are not aware of the danger posed by Defendant's Products.**

25.    Consumers reasonably expect that Defendant's Products are safe for their intended purpose.  The purpose of dry shampoo products, such as the ones made by Defendant, is to be applied to the scalp and hair.  Defendant advises consumers to spray dry shampoo on their hair and roots, and massage the Product into the scalp.[37]

26.    For example, this instructional video, which includes tips on using one of Defendant's Products, shows a model spraying the Product at her hair and scalp near her

---

[33] https://www.fda.gov/cosmetics/resources-consumers-cosmetics/cosmetics-safety-qa-personal-care-products.

[34] https://www.valisure.com/valisure-newsroom/valisure-detects-benzene-in-dry-shampoo

[35] https://www.valisure.com/valisure-newsroom/valisure-detects-benzene-in-dry-shampoo

[36] https://assets-global.website-files.com/6215052733f8bb8fea016220/6360f7f49903987d8f4f4309_Valisure%20FDA%20Citizen%20Petition%20on%20Benzene%20in%20Dry%20Shampoo%20Products_103122.pdf (Table 5).

[37] "Tips for Using Dry Clean Only by Sebastian," by SebastianProTV, https://www.youtube.com/watch?v=hgcPmwLoYDw

face:



27.    Consumers would not anticipate that a product specifically designed for use on the scalp—where the product could be absorbed by the skin—would contain a known carcinogen.  In addition, consumers would not anticipate that a product designed to be sprayed close to the nose, eyes, and mouth, where it could be inhaled or absorbed, would contain a known carcinogen.

28.    In addition, consumers cannot reasonably know about the dangerous nature of the Products at the point of sale, and cannot discover the danger present with a reasonable investigation at the time of purchase, or even subsequent use.  Because benzene is a colorless liquid that evaporates quickly when exposed to air, consumers cannot see it when it is sprayed.  Instead, unaware they have been exposed, they may unwittingly inhale it.

29.    In addition, consumers are unaware of the risk because Defendant failed to

notify or warn consumers of the risk of benzene contamination in its Products.
Defendant advertised and sold the Products without any labeling to indicate to
consumers that these Products contain benzene.

30.    The following image is illustrative of the types of labels contained on the
Products purchased by Plaintiff and the class members.  The labeling on the back of the
bottle contains "Warnings," but makes no mention of benzene or the presence of a
carcinogenic ingredient:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28




31.     Similarly, the label does not disclose that there is a risk that these Products may be contaminated with benzene.  Because Defendant does not warn consumers that the Products may be contaminated with benzene, consumers are misled into believing that the Products do not contain benzene, and that there is no risk of benzene contamination.[38]

**E.     Plaintiff was misled by Defendant.**

32.     In August 2022, Mr. White bought a 1.7-ounce bottle of Sebastian Dry Clean Only Dry Shampoo at a Walmart in Hillsborough County, FL.

33.     In purchasing the item, Mr. White relied on the representations on the packaging.  The packaging did not disclose that the Product had benzene in the ingredients list.  It also did not warn, or otherwise disclose that the Product was contaminated with benzene.  It did not disclose any risk of benzene contamination.  Thus, at the time of purchase, Plaintiff was unaware that Defendant's Product contained benzene.  He did not know that there was any risk of benzene in the Product.  Plaintiff was further unaware that Defendant's Product would release benzene upon use.

34.     Plaintiff purchased Defendant's Product on the assumption that the labeling of Defendant's Product was accurate and that the Product was unadulterated, safe, and effective.  Plaintiff would not have purchased Defendant's Product had he known it contained benzene, a known human carcinogen.  He would not have purchased the Product had he known that the Product would release benzene when used.  In addition, he would not have purchased the Product had he known that there was a risk of benzene contamination in the Product.

35.     As a result, Plaintiff suffered injury in fact when he spent money to purchase a Product he would not otherwise have purchased absent Defendant's misconduct.

---

[38] Moreover, since at least October 2022, Defendant has known of the benzene contamination in its Products.  The report by Valisure, which tested Defendant's Products and found elevated levels of benzene, was widely publicized.  Thus, by at least October 2022, Defendant has known that its Products may be contaminated with benzene, but has failed to warn consumers or recall the Products.

# V. Class Action Allegations.

## A. The Nationwide Class and the Florida Subclass

36. Plaintiff brings his claims individually and on behalf of the Nationwide Class: all persons who, while in the United States and within the applicable statute of limitations period, purchased one or more Products for personal use or consumption (the "Nationwide Class").

37. Plaintiff also brings his claims on behalf of the Florida Subclass: all persons who, while in the state of Florida and within the applicable statute of limitations period, purchased one or more Products for personal use or consumption (the "Florida Subclass").

38. The following people are excluded from the proposed class and subclass: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers, and directors; (3) persons who properly execute and file a timely request for exclusion from the class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

39. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

### Numerosity & Ascertainability.

40. The proposed class contains members so numerous that separate joinder of each member is impractical. There are tens or hundreds of thousands of class members. The precise number of class members is unknown to Plaintiff at this time.

41. Members of the proposed class can be identified through public notice.

*Predominance of Common Questions.*

42.    There are questions of law and fact common to the proposed class. Common questions of law and fact include, without limitation:

(1) Whether Defendant misrepresented and/or failed to disclose material facts concerning the Products;

(2) Whether Defendant's conduct was unfair and/or deceptive;

(3) Whether Defendant breached an express warranty;

(4) Whether Defendant breached an implied warranty;

(5) What damages are needed to compensate Plaintiff and the proposed class; and

(6) Whether an injunction is necessary to prevent Defendant from continuing to market and sell defective and adulterated Products that contain benzene, a known human carcinogen.

*Typicality & Adequacy.*

43.    Plaintiff's claims are typical of the other class members' claims. Like other class members, Plaintiff purchased Defendant's Product.

44.    The interests of the members of the proposed class and subclass will be adequately protected by Plaintiff and his counsel. Plaintiff's interests are aligned with, and do not conflict with, the interests of the members of the proposed class or subclasses that he seeks to represent. Moreover, Plaintiff has retained experienced and competent counsel to prosecute the class and subclasses' claims.

*Superiority.*

45.    The prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent or varying adjudication with respect to individual members, which would establish incompatible standards for the parties opposing the class. For example, individual adjudication would create a risk that the same product is found unfit for its ordinary use for some proposed class members, but not for others.

46.    Common questions of law and fact predominate over any questions

affecting only individual members of the proposed class. These common legal and factual questions arise from certain central issues which do not vary from class member to class member, and which may be determined without reference to the individual circumstances of any particular class member. For example, a core liability question is common: whether Defendant has made and marketed a defective product unfit for its ordinary use.

47.     A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of millions of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

## VI.    Claims.

### Count I:

### Violation of the Florida Deceptive and Unfair Trade Practices Act

### (FLA. STAT. §501.201, *et seq.*)

### (On Behalf of the Florida Subclass)

48.     Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

49.     Plaintiff brings this claim individually and on behalf of the Florida Subclass pursuant to section 501.211, Florida Statutes.

50.     The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") makes unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

51.     Plaintiff and the Florida Subclass members are "consumers" within the meaning of section Fla. Stat. § 501.203(7). Defendant is engaged in the practice of advertising, providing, and offering for sale the Products, which constitutes trade and commerce as defined by Florida Statute § 501.203(8).

52.     Defendant marketed, sold, and distributed the Products without disclosing that they were adulterated with benzene.

53.     Defendant's Products had an ingredients list, which represented that the Products contained only the listed ingredients.  This was false, because the Products included benzene, which was not listed.

54.     Defendant's Products should have, but did not, mention benzene on the label.  Defendant's ingredients list should have, but did not include, benzene.  In addition, Defendant should have, but did not, include the risk of benzene exposure in its "Warnings."  Defendant did not warn consumers that the Products contained benzene, or that they might be contaminated with benzene.

55.     These practices are unfair.  Selling adulterated and misbranded products violates established public policy.  It further violates established public policy to sell products that contain a known carcinogen, without warning buyers.  In addition, it is immoral, unethical, unscrupulous, and substantially injurious to consumers to sell a consumer product that contains or may contain benzene, a known carcinogen, without disclosing the risk to consumers.

56.     The practices are also deceptive.  A reasonable consumer is likely to believe that an ingredients list on a consumer product is accurate.  Thus, when a reasonable consumer reads the ingredients list on Defendant's Products, the consumer is likely to be misled into believing that the Product does not contain benzene, to the consumer's detriment.

57.     Similarly, when a reasonable consumer reads the "Warnings" on Defendant's Products, and sees no mention of benzene, the consumer is likely to be misled into believing that there is no risk of benzene exposure, to the consumer's detriment.

58.     This is particularly so because consumers cannot independently verify whether or not the Products contain benzene at the point of sale, or thereafter.  Consumers cannot detect what is in the opaque bottle at the point of sale.  In addition,

because benzene is colorless, and evaporates quickly when exposed to air, consumers cannot tell whether a product contains benzene even when they are using the product.

59.    Because of Defendant's practices, Plaintiff purchased the Product without any knowledge, or reason to know, that the Product was adulterated and misbranded. He did not know that the Product contained benzene, and did not know that there was any risk of benzene contamination.  If Plaintiff had known that the Product contained, or risked containing benzene, a known carcinogen, he would not have purchased it.

60.    If Plaintiff had known that benzene was an ingredient in the Product, he would not have bought it.  If the Product had warned that it contained benzene, or warned of benzene exposure, Plaintiff would not have bought it.  Because he purchased the Product, he lost money.

61.    No reasonable consumer would have paid any amount for products containing benzene, a known carcinogen, much less at the levels that were found to be in Defendant's Products.  This is particularly true because the intended use of Defendant's Products is to be sprayed at the head and scalp near the face, where it can be easily inhaled or absorbed.  Similarly, no reasonable consumer would have paid any amount for Defendant's Products if they had known that there was a risk that the Products could be contaminated with benzene.

62.    If Plaintiff and class members had been informed that Defendant's Products contained or may contain benzene, they would not have purchased or used the Products at all.  Because they purchased the Products, they lost money.  Had they known the truth, they (a) would not have purchased the Products at all, (b) overpaid for the Products because it is sold at a price premium due to Defendant's false representations, or (c) received a Product that is worthless for its intended purpose.

63.    Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary.  Plaintiff likes Defendant's Products, and would purchase Defendant's Products in the future if the Product was redesigned to avoid the risk of benzene contamination.  He faces an imminent threat of harm, however, because he

cannot rely on the representations on the label that the Product is safe and that it does not contain benzene.  Absent injunctive relief, Defendant may continue to advertise, promote, and sell adulterated Products that deceive the public as to their ingredients, contents and/or safety.

64.    Plaintiff and the Florida Subclass seek an order enjoining Defendant from continuing to conduct business through fraudulent or unlawful acts and practices and to commence a corrective advertising campaign.  Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary.

65.    On behalf of Plaintiff and the Florida Subclass, Plaintiff also seeks an order entitling him and the subclass to recover all monies spent on Defendant's Products, which were acquired through acts of fraudulent, unfair, or unlawful competition.

66.    Plaintiff and members of the subclass are entitled to injunctive and equitable relief, and a full refund in the amount they spent on Defendant's Products.

## Count II:

## Breach of Express Warranty

## (On Behalf of the Nationwide Class)

67.    Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

68.    Plaintiff brings this claim on behalf of himself and the Nationwide Class. In the alternative, Plaintiff brings this claim on behalf of the Florida Subclass.

69.    Defendant expressly warranted that the listed ingredients were the only ingredients in its dry shampoo Products.

70.    For example, for the Product purchased by Plaintiff:[39]

ISOBUTANE, ALCOHOL DENAT., PROPANE, TAPIOCA STARCH, AQUA, SILICA, POLYMETHYLSILSESQUIOXANE, PARFUM, HYDROXYCITRONELLAL, LINALOOL, BENZYL SALICYLATE, ALPHA-ISOMETHYL IONONE, AMYL CINNAMAL, GERANIOL, CITRONELLOL, HEXYL CINNAMAL

---

[39] *Id.*

Class Action Complaint                    16                    Case No. 2:22-cv-9339

71. The Products' ingredients lists make no mention of benzene. Similarly, the packaging omits any mention of benzene, and does not warn consumers that the Products contain benzene, or the risk of benzene contamination.

72. The ingredients lists are an express affirmation of fact that these are the only ingredients in Defendant's Products.

73. This warranty was part of the basis of the bargain, and Plaintiff and class members saw and relied on this warranty.

74. In fact, the Products do not conform to these express representations because the Products contain an additional ingredient: benzene.

75. Defendant expressly warrants that its Products are safe and fit for their ordinary use—application on human hair and scalp. For example, Defendant instructs consumers to "Spray on roots" of the hair, and to "work it in" to the hair.[40]

76. This warranty was part of the basis of the bargain, and Plaintiff and class members saw and relied on this warranty.

77. In fact, the Products do not conform to these express representations because the Products contain benzene, which is a known carcinogen that is not safe for application on the hair and scalp.

78. Defendant expressly represents that the Products are manufactured in compliance with applicable standards, and that they are not adulterated or misbranded. The Products do not conform to these express representations because the Products contain benzene, which is a known carcinogen.

79. Plaintiff and each class member read and relied on one or more of the express warranties provided by Defendant in the labeling, packaging, and written advertisements in deciding to purchase the Products.

80. Plaintiff and each class member are natural persons who are reasonably expected to use, consume, or be affected by the adulterated and/or misbranded

---

[40] *See* https://www.sebastianprofessional.com/en-US/products/care/salon-shampoo/dry-clean-only

Products manufactured and sold by Defendant.

81.     As the intended ultimate consumer of the Products, Plaintiff and class members are the intended third-party beneficiaries of any contracts between Defendant and retailers for the sale of the Products.  Plaintiff and the class are foreseeable third-party beneficiaries because Defendant sells the Products to retailers for distribution and sale to consumers such as Plaintiff and class members.

82.     Defendant's breach directly caused harm to Plaintiff and class members. Plaintiff and each class member would not have purchased the Products had they known the Products contained benzene or had a risk of benzene contamination.  Plaintiff and each class member would not have purchased the Products had they known the Products were not suitable for human application.  They would not have purchased the Products had they known the Products did not comply with applicable standards, and/or were adulterated and misbranded.

83.     As a direct and proximate result of Defendant's breach of express warranty, Plaintiff and other class members have been injured and suffered damages.  Had they known the truth, they (a) would not have purchased the Products at all, (b) overpaid for the Products because they are sold at a price premium due to Defendant's false representations, or (c) received a Product that is worthless for its intended purpose.

84.     On December 19, 2022, Plaintiff gave notice to Defendant of its breaches by mailing a notice letter to Defendant's headquarters.

**Count III:**

**<u>Breach of Implied Warranty</u>**

**(On Behalf of the Nationwide Class)**

85.     Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

86.     Plaintiff brings this claim on behalf of himself and the Nationwide Class. In the alternative, he brings this claim on behalf of the Florida Subclass.

87.     Defendant was at all relevant times the manufacturer, distributor, warrantor

and/or seller of the Products.  Defendant knew or had reason to know of the specific use for which its Products were purchased.

88.    Plaintiff and class members purchased the Products for the particular purpose of using them as a dry shampoo.

89.    Defendant knew that Plaintiff and class members were purchasing the Products for this purpose, and in fact instructed them to use it as a dry shampoo on hair and scalp.

90.    Defendant markets itself as a knowledgeable and effective developer and purveyor of personal care items.  Defendant knew, or had reason to know, that Plaintiff and class members would justifiably rely on Defendant's particular skill and knowledge of personal care products in selecting or furnishing products suitable for use as a dry shampoo.

91.    Plaintiff and class members did justifiably rely on Defendant's judgment and skill.

92.    Defendant impliedly warranted that the Products were fit for the particular purposes for which they were intended and sold.

93.    Because the Products contained benzene, they were not fit for the ordinary purposes for which such Products are used.  Thus, Defendant breached their implied warranty of fitness for the Products.

94.    As described above, the Products supplied to Plaintiff and class members were defective because they contained benzene, and were not merchantable.

95.    Because the Products contained benzene, a known carcinogen, they were also not of the same quality or the fair average quality as those generally acceptable in the trade.

96.    Further, the Products were not adequately labeled.  They did not disclose that they had benzene.  Defendant impliedly represented that the Products were free of harmful ingredients like benzene, by listing ingredients but omitting benzene.

97.    For example:[41]

ISOBUTANE, ALCOHOL DENAT., PROPANE, TAPIOCA STARCH, AQUA, SILICA, POLYMETHYLSILSESQUIOXANE, PARFUM, HYDROXYCITRONELLAL, LINALOOL, BENZYL SALICYLATE, ALPHA-ISOMETHYL IONONE, AMYL CINNAMAL, GERANIOL, CITRONELLOL, HEXYL CINNAMAL

98.    Defendant further impliedly represented that the Products were free of harmful ingredients like benzene by failing to warn consumers that the Products contained, or had a risk of containing, benzene.

99.    Contrary to these implied warranties, the Products were defective, unmerchantable, mislabeled, unfit for their ordinary use when sold, and unfit for the particular purpose for which they were sold.

100.    Further, as the intended ultimate consumers of the Products, Plaintiff and the class members are the intended third-party beneficiaries of any contracts between Defendant and any retailers from whom Plaintiff obtained Products, which contain these implied warranties.  Plaintiff and the class are foreseeable third-party beneficiaries because Defendant sells the Products to retailers for distribution and sale to consumers such as Plaintiff and class members.

101.    As a direct and proximate result of Defendant's breach of express warranty, Plaintiff and other class members have been injured and suffered damages.  Had they known the truth, they (a) would not have purchased the Products at all, (b) overpaid for the Products because it is sold at a price premium due to Defendant's false representations, or (c) received a Product that is worthless for its intended purpose.

102.    On December 19, 2022, Plaintiff gave notice to Defendant of its breaches of implied warranties by mailing a notice letter to Defendant's headquarters.

---

[41] https://www.sebastianprofessional.com/en-US/products/care/salon-shampoo/dry-clean-only

**Count IV:**

**<u>Unjust Enrichment</u>**

**(On Behalf of the Nationwide Class and the Florida Subclass)**

103.    Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

104.    Plaintiff brings this claim on behalf of himself and the Nationwide Class and the Florida Subclass.

105.    Plaintiff and class members purchased the Products.  They reasonably believed that the Products were fit for their expected and ordinary purpose.  They did not know that the Products were adulterated with benzene.

106.    Plaintiff and class members conferred benefits on Defendant by purchasing defective Products.

107.    Defendant voluntarily accepted and retained this benefit.

108.    In exchange, Defendant provided Products that had an inherent defect, were unfit for and unsafe for their ordinary use, were mislabeled, and were adulterated with benzene.

109.    It would be inequitable for Defendant to retain this benefit.

**Plaintiff Has No Adequate Remedy at Law**

110.    Plaintiff seeks damages and, in the alternative, restitution.  Plaintiff is permitted to seek equitable remedies in the alternative because he has no adequate remedy at law.  For example, the remedies at law available to Plaintiff are not equally prompt or otherwise efficient.  The need to schedule a jury trial may result in delay.  And a jury trial will take longer, and be more expensive, than a bench trial.

**VII.    Relief.**

111.    Plaintiff seeks the following relief individually and for the proposed class and subclass:

- An order certifying the asserted claims, or issues raised, as a class action;
- An order appointing Plaintiff as a representative for the Nationwide Class and

the Florida Subclass, and appointing his counsel as lead counsel for the classes;

- A judgment in favor of Plaintiff and the proposed classes;
- Damages, treble damages, statutory damages, and punitive damages where applicable;
- Restitution;
- Disgorgement, and other just relief;
- An order awarding Plaintiff and all other class members damages in an amount to be determined at trial for the wrongful acts of Defendant;
- Pre- and post-judgment interest on all amounts awarded;
- Injunctive relief as pleaded or as the Court may deem proper;
- Reasonable attorneys' fees and costs, as allowed by law; and
- Any additional relief that the Court deems reasonable and just.

## **Demand for Jury Trial**

112.    Plaintiff and class members hereby demand a trial by jury on all issues so triable.

Dated: December 27, 2022                    Respectfully submitted,

                                                By: */s/ Christin Cho*

                                                Christin Cho (Cal. Bar No. 238173)
                                                christin@dovel.com
                                                Simon Franzini (Cal. Bar No. 287631)
                                                simon@dovel.com
                                                DOVEL & LUNER, LLP
                                                201 Santa Monica Blvd., Suite 600
                                                Santa Monica, California 90401
                                                Telephone: (310) 656-7066
                                                Facsimile: (310) 656-7069

                                                *Attorneys for Plaintiff*